Martin F. Casey
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
mfc@caseybarnett.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
WOLFES & VON ETZDORF
ASSECURANZBUREAU OHG a/s/o
PROCESADORA LARAN S.A.C. and a/s/o
ANDEAN SUN PRODUCE LLC.                                    20 Civ.

       Plaintiff,

       - against –                                        **COMPLAINT**

MSC MEDITERRANEAN SHIPPING COMPANY
S.A.

       Defendant.
--------------------------------------------------------------X

    Plaintiff, WOLFES & VON ETZDORF ASSECURANZBUREAU OHG a/s/o

PROCESADORA LARAN S.A.C. and a/s/o ANDEAN SUN PRODUCE LLC by and through its

attorneys, Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as

follows:

### JURISDICTION

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and the

provisions contained in the MSC bill of lading, which provides for jurisdiction in this District for

cargo shipments that transit through the United States.

## PARTIES

2.      At all material times, WOLFES & VON ETZDORF ASSECURANZBUREAU OHG (hereinafter "WVE" or "Plaintiff") was and is a corporation organized and existing by virtue of the laws of a foreign country with an office and place of business located at Oberhafenstrasse 1, Hamburg 20097, Germany, and is the subrogated underwriter of two consignments of Fresh Mandarins, as more specifically described below.

3.      At all material times, PROCESADORA LARAN S.A.C., (hereinafter "Laran" or "Plaintiff") was and is a corporation organized and existing by virtue of the laws of a foreign country with an office and place of business located at Jr. Juan Acevedo Nro. 364, Urb. Colmenares, Lima, Peru and was the owner/shipper of two consignments of Fresh Mandarins, as more specifically described below.

4.      At all material times, ANDEAN SUN PRODUCE LLC. (hereinafter "Andean Sun" or "Plaintiff") was and is a corporation with an office and a place of business located at 1500 NW 89 Ct., Miami, Florida 33172, and was the owner/consignee of two consignments of Fresh Mandarins, as more specifically described below.

5.      At all material times, defendant, MSC MEDITERRANEAN SHIPPING COMPANY S.A. (hereinafter "MSC" or "Defendant") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 420 Fifth Avenue, New York, New York 100016, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire.

6.      Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

2

## RELEVANT FACTS

### Claim 1

7.      On or about June 18, 2019, a consignment consisting of 1,352 Boxes of Fresh Mandarins, laden in refrigerated container TRIU 8166388, then being in good order and condition, was delivered to MSC and/or its agents in Callao, Peru by cargo shipper Laran. The cargo was booked for transit on board the M/V MSC AVNI in Callao destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of 0°C at all times, all pursuant to MSC bill of lading MEDUL2263845 dated June 19, 2019.

8.      The cargo of Fresh Mandarins was subject to a USDA protocol which requires that certain temperatures be maintained during the transit. MSC was aware of this USDA protocol and provided equipment to monitor the USDA temperature requirements during the transit. Moreover, MSC applied for, and received authorization from the USDA to transport cargo subject to the USDA protocol based upon certain and various representations MSC made to the USDA.

9.      Thereafter the container was loaded on board the M/V MSC AVNI on or about June 18, 2019. MSC bill of lading MEDUL2263845 was issued and the vessel sailed for her intended destination.

10.      On June 24, 2019 the aforementioned container was discharged from the M/V MSC AVNI in Cristobal, Panama for transshipment purposes.

11.      On or about June 25, 2019 the aforementioned container was loaded on board the M/V MSC CORINNA for transit to Philadelphia.

3

12.　　On or about June 30, 2019, the Vessel arrived in Philadelphia and container TRIU 8166388 was discharged.

13.　　At the time of discharge, it was determined that MSC had failed to maintain proper temperatures during transit resulting in the cargo failing the USDA Cold Treatment Protocol. USDA placed a hold on the container pending completion of a proper cold treatment protocol.

14.　　On July 13, 2019 container TRIU 8166388 was released by the USDA and delivered to the cargo receiver Andean Sun.

15.　　As a result of the temperature abuse and delay in transit, the consignment was not in the same good order and condition as when received by defendant, but instead had suffered physical damage while in said defendant's care, custody and control.

16.　　The damage to the cargo was not the result of any act or omission of the plaintiff but, to the contrary, was due solely as the result of the negligence, fault, neglect, breach of contract of carriage, and bailment on the part of the defendant and/or its agents.

17.　　The fair market value of the consignment at destination was $39,208.00. Plaintiff was able to salvage the cargo for $28,752.00, resulting in cargo damages in the amount of $10,456.00.

18.　　As a result of the foregoing, Plaintiff suffered damages in the amount of $10,456.00.

19.　　At all times relevant hereto, a contract of insurance for property damage was in effect between Laran, Andean Sun and WVE, which provided coverage for, among other things, loss or damage to the aforementioned consignment of Fresh Mandarins.

4

20.     Pursuant to the aforementioned contract of insurance between Laran, Andean Sun and WVE, monies have been expended on behalf of Laran and Andean Sun to the detriment of WVE due to the damages sustained during transit.

21.     As WVE has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendant, WVE has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant.

22.     Laran and Andean Sun have, in addition, assigned the deductible portions of the claim to WVE.

23.     By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $10,456.00.

## CLAIM 2

24.     On or about June 18, 2019, a consignment consisting of 1,352 Boxes of Fresh Mandarins, laden in refrigerated container SZLU 9039557, then being in good order and condition, was delivered to MSC and/or its agents in Callao, Peru by cargo shipper Laran. The cargo was booked for transit on board the M/V MSC AVNI in Callao destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of 0°C at all times, all pursuant to MSC bill of lading MEDUL2263852 dated June 19, 2019.

25.     The cargo of Fresh Mandarins was subject to a USDA protocol which requires that certain temperatures be maintained during the transit. MSC was aware of this USDA protocol and provided equipment to monitor the USDA temperature requirements during the transit. Moreover,

5

MSC applied for, and received authorization from the USDA to transport cargo subject to the USDA protocol based upon certain and various representations MSC made to the USDA.

26.     Thereafter, the container was loaded on board the M/V MSC AVNI on or about June 18, 2019, MSC bill of lading MEDUL2263845 was issued and the vessel sailed for her intended destination.

27.     On June 24, 2019 the aforementioned container was discharged from the M/V MSC AVNI in Cristobal, Panama for transshipment purposes.

28.     On or about June 25, 2019 the aforementioned container was loaded on board the M/V MSC CORINNA for transit to Philadelphia.

29.     On or about June 30, 2019, the Vessel arrived in Philadelphia and container SZLU 9039557 was discharged.

30.     At the time of discharge, it was determined that MSC had failed to maintain proper temperatures during transit resulting in the cargo failing the USDA Cold Treatment protocol. USDA placed a hold on the container pending completion of a proper cold treatment protocol.

31.     On July 29, 2019 container SZLU 9039557 was released by the USDA and delivered to cargo receiver Andean Sun.

32.     As a result of the temperature abuse and delay in transit, the consignment was not in the same good order and condition as when received by defendant, but instead had suffered physical damage while in said defendant's care, custody and control.

33.     The damage to the cargo was not the result of any act or omission of the plaintiff but, to the contrary, was due solely as the result of the negligence, fault, neglect, breach of contract of carriage, and bailment on the part of the defendant and/or its agents.

34.     The fair market value of the consignment at destination was $39,208.00. Plaintiff was able to salvage the cargo for $14,448.00 resulting in cargo damages in the amount of $24,760.00.

35.     As a result of the foregoing, Plaintiff suffered damages in the amount of $24,760.00.

36.     At all times relevant hereto, a contract of insurance for property damage was in effect between Laran, Andean Sun and WVE, which provided coverage for, among other things, loss or damage to the aforementioned consignment of Fresh Mandarins.

37.     Pursuant to the aforementioned contract of insurance between Laran, Andean Sun and WVE, monies have been expended on behalf of Laran and Andean Sun to the detriment of WVE due to the damages sustained during transit.

38.     As WVE has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendant, WVE has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the defendant.

39.     Laran and Andean Sun have, in addition, assigned the deductible portions of the claim to WVE.

40.     By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $24,760.00.

### AS AND FOR A FIRST CAUSE OF ACTION

41.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 40, inclusive, as if herein set forth at length.

7

42.     Pursuant to the contract of carriage entered into by and between the parties, the Defendant owed contractual and statutory duties to the aforementioned cargo owner to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

43.     The Defendant breached its contractual and statutory duties by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

44.     As a direct and proximate result of said breach of contract by Defendant, the Plaintiff has suffered damages presently estimated to be no less than $10,456 with respect to Claim 1 and $24,760 with respect to Claim 2.

45.     By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial. no part of which has been paid, although duly demanded, which are presently estimated to be no less than $35,216.00

## AS AND FOR A SECOND CAUSE OF ACTION

46.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 40, inclusive, as if herein set forth at length.

47.     At the time of the aforementioned incident, Defendant together with the entities they hired to act on their behalf, were acting as bailees of the aforementioned cargo and in their own capacity, or through their contractors, agents, servants, or sub-bailees, had a duty to safely and properly keep, care for and deliver the shipment in the same good order and condition as when entrusted to them. Defendant also had a duty to ensure that the services provided for the shipment were performed with reasonable care and in a non-negligent and workmanlike manner.

8

48.     Defendant breached its duties and obligations as bailee by failing to properly carry, bail keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

49.     As a direct and proximate result of said breach of contract by Defendant, the Plaintiff has suffered damages presently estimated to be no less than $10,456 with respect to Claim 1 and $24,760 with respect to Claim 2.

50.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $35,216.00.

## AS AND FOR A THIRD CAUSE OF ACTION

51.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 40, inclusive, as if herein set forth at length.

52.     The Defendant owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the aforementioned cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

53.     The Defendant breached and was negligent in exercising its duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

54.     As a direct and proximate result of the negligent acts committed by Defendant, the Plaintiff has suffered damages presently estimated to be no less than $10,456 with respect to Claim 1 and $24,760 with respect to Claim 2.

9

55.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $35,216.00.

**WHEREFORE,** Plaintiff prays:

1.     That process in due form of law may issue against Defendant citing it to appear and answer all and singular the matters aforesaid;

2.     That judgment may be entered in favor of Plaintiff against Defendant for the amount of Plaintiff's damages in the amount of at least $35,216.00 plus interest and costs; and

3.     That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
        April 21, 2020
        289-174

                              **CASEY & BARNETT, LLC**
                              Attorneys for Plaintiff

                    By:    _Martin Casey_
                              Martin F. Casey
                              305 Broadway, Ste 1202
                              New York, New York 10007
                              (212) 286-0225

10